

EMERGENCY CONTACT LIST

Maintenance Department

Triads Home Office  303-744-8285  Human Resources Lori Todd

PM Office Line        303-925-1020

Project Manager      303-241-8176   Dominic Cordova

PM Supervisor        720-382-0613   Ruben Morales

SW Supervisor        720-980-9193   Joe Hoffman

SW Maintenance       720-281-0918   Chris Marshall

PM Maintenance       303-803-2494   Mark Gordier

PM Maintenance       720-495-7959   Alonzo Hernandez

PM-SW (On Call)      303-349-2871   John Parker



## GENERAL MAINTENANCE SERVICES CONTRACT

This General Maintenance Services Contract ("**Contract**") is made as of September 1st, 2012 ("**Effective Date**") between Park Meadows Mall, LLC ("**Owner**") and Triad Service Solutions, Inc. ("**Contractor**").

### PURPOSE

A. Owner owns the property specified in <u>Exhibit A</u> of this Contract (the "**Property**").

B. Owner desires to engage Contractor to provide general maintenance services at the Property and Contractor desires to provide such services, all on the terms set forth below.

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual agreements herein, the parties agree as follows:

### AGREEMENT

1. **Basic Engagement.** Contractor shall provide certain general maintenance, repair and facilities Services (as defined in <u>Section 3</u> of this Contract) pursuant to the terms and conditions contained herein for the Property. This Contract is subject to earlier termination as provided in <u>Section 10</u>. This Contract is non-exclusive, and Owner retains the right to use other providers for the same services. CONTRACTOR SHALL COMPLY WITH THE CODE OF CONDUCT SET FORTH IN **EXHIBIT E** HERETO AT ALL TIMES.

2. **Term and Extension.**

   a. **Term.** This Contract shall be binding as of the Effective Date when signed and delivered by the parties. However, the parties' obligations under this Contract shall commence on September 1, 2012 ("**Commencement Date**") for the Property set forth on Exhibit A. This Contract will continue and remain in effect for a period ("**Term**") expiring upon the close of the Property's required hours for the Services on October 31, 2015 ("**Expiration Date**"), unless Owner elects to extend the Term as provided below, or unless this Contract is terminated earlier pursuant to <u>Section 10</u>.

   b. **Extension.** By written notice to Contractor at least thirty (30) days before the Expiration Date, Owner may extend the Term for one (1) additional period of two (2) years on the same terms and conditions then in effect under this Contract immediately prior to such extension. Upon expiration of the initial Term (or extended Term, if Owner exercises the right to extend), this Contract shall be automatically extended on a month-to-month basis until either party terminates by giving the other party at least thirty (30) days' written notice. During any extension and during any such thirty (30) day notice period Owner shall retain the rights to terminate this Contract earlier as provided in <u>Section 10</u>.

3. **Services.** Contractor agrees to provide to Owner the "**Services**" set forth on Exhibits **C-1** and **C-2** attached hereto and made a part hereof. Contractor shall provide a staff of qualified maintenance personnel to maintain and improve the performance of Property in accordance with Owner's standards. Contractor shall provide the Services at the Property beginning on the Commencement Date and terminating in accordance with this Contract. Services may be added, deleted or modified from time to time upon the consent of the parties, as evidenced in a written amendment to this Contract.

4.  Payment Terms; Invoices; Taxes.

a.  **Payment Terms In General.** Owner shall pay Contractor the amounts set forth on Exhibit B for the Services properly and fully performed at the Property, subject to the other provisions of this Section set forth below. Without limiting the generality of the foregoing statement, Contractor shall not invoice Owner for any amounts in excess of the amounts specified for the Property under Exhibit B without Owner's express written agreement in each case, and shall in any event comply with all provisions of this Section 4. Notwithstanding the foregoing, in the event Contractor pays any of its employees at a labor rate less than those specified on Exhibit B, Owner shall pay Contractor the billed labor rate based on such lesser amount.

b.  **Amounts All Inclusive For Equipment, Supplies and/or Other Materials.** The amounts set forth on Exhibit B are all inclusive for all equipment, supplies and/or other materials necessary to provide the Services. Unless Owner expressly agrees otherwise in advance and in writing, in no event will Owner pay in excess of such amounts for any equipment, supplies or materials necessary to provide the Services.

c.  **Billed Labor Rates and Changes.** The billed labor rates, which are defined as the pay rate per hour actually paid to Contractor's employees performing the Services and work, multiplied by the percent mark-up, as referenced on Exhibit B, cannot be reduced or increased, unless agreed upon, in writing, by both parties. Any Contractor employee hired to perform Services after the Effective Date (whether on a permanent or temporary basis) shall be hired at the market rate then in effect, as approved in advance by Owner. Beginning on the first day of the first calendar month following the first annual anniversary of the Commencement Date, and on each annual anniversary date thereafter while this Contract is in effect, the labor rates may be adjusted up or down by no more than one and one-half percent (1.5%) based on an amount equal to the percentage increase or decrease for the previous twelve-month period in the Consumer Price Index for all Urban Consumers (CPI-U), all U.S. City Averages, all Items, as published by the U.S. Department of Labor. Notwithstanding the foregoing specified adjustments of billed labor rates, should legislation be implemented by a governmental entity which compels Contractor to increase its internal wage scale or otherwise increase the internal costs of Contractor in a manner beyond Contractor's control, Contractor shall, upon submission to Owner of reasonable documentation which is satisfactory to Owner evidencing the actual increases of such costs, be permitted to bill Owner the increased amount due solely to the implementation of the legislation.

d.  **Invoice.** Contractor shall provide invoices which fully comply with the provisions of this Contract in substance and form, and shall invoice Owner at the Property address set forth on Exhibit A on a monthly basis. Contractor shall invoice Owner for only the hours actually worked by Contractor's employees at the Property, together with the cost of the equipment, supplies and/or other materials actually used at the Property during the applicable month (subject to the above provisions and Exhibit B). However, notwithstanding the foregoing, for any manager or other salaried employee, Contractor shall not bill Owner more than forty (40) hours per week, regardless of whether such person actually works more than forty (40) hours in such week, and any time worked in excess of forty (40) hours in any week by any manager or other salaried employee shall not be included in the calculation of annual hours awarded pursuant to this Contract. Each invoice shall be substantially in the form of Exhibit D (subject to changes in such

2

form as Owner may request) and shall itemize the hours worked by Contractor's employees at the Property and shall list the equipment, supplies and/or other materials used to perform the Services rendered (and the cost thereof). Each employee shall be required to sign in and out or provide similar documentation at a location on the Property designated by Owner. Each invoice shall be accompanied by a time recapitulation showing the names of Contractor's employees who worked during such invoice period and the total number of hours such employee worked. Each invoice must be approved and signed-off on by the General Manager of the Property. Any changes to the agreed hours in Exhibit B must be approved or ordered by Owner in writing. Contractor shall not add hours to the daily schedule in any month in order to compensate for any shortage in a prior invoice, without the written approval of Owner. Owner shall make payment of amounts in approved invoices within thirty (30) days of the date thereof.

c.  **Taxes.** The billing rates and amounts for equipment, supplies and/or other materials set forth on **Exhibit B** include any and all state and local sales, service, use, and other taxes, however designated, which may be levied or assessed on the Services and/or any and all equipment, supplies and/or other materials ("Taxes"). Notwithstanding the foregoing, Contractor shall show all Taxes (including the applicable Tax rate) as separate line items on each invoice. Owner shall have no obligation with respect to the payment to the applicable taxing authorities of any Taxes whatsoever on the foregoing items, including, but not limited to, taxes relating to Contractor's net or gross income or revenue, license, occupation, or real or personal property. Contractor shall pay all applicable Taxes and file all required reports and forms. In the event that a governmental entity implements legislation resulting in a change in the applicable Tax rate upon prior written notice to Owner of such legislation, and the changed Tax rate, Contractor shall be permitted to bill Owner the increased Tax amount due solely to the implementation of legislation.

5.  **Staffing; Health Insurance.**

a.  **Personnel.** Contractor shall employ sufficient personnel, with the required background, experience and training, to perform safely and properly the Services required under this Contract. Contractor shall provide Owner at all times with an updated organizational chart of employees responsible for providing Contractor's Services, along with a list of emergency telephone and pager numbers. Contractor agrees that upon written request of an Owner it shall reassign any of its employees who, in the reasonable opinion of such Owner, are not satisfactory.

b.  **Supervisors.** All supervisory personnel of Contractor assigned to work at the Property shall have the authority, in the interest of the Contractor, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline Contractor's non-supervisory personnel. Any exercise of such authority by supervisory personnel shall be in accordance with Contractor's company policies and shall be approved in advance by an executive of Contractor. With respect to the Property, all supervisory personnel thereat shall carry valid identification in a form that has been approved by Owner.

c.  **Representatives.** Contractor agrees to provide a dedicated representative who will work exclusively with the Property's General Manager. Such representative shall meet at least once each quarter with the Property's General Manager and/or such person's designee to review the Contractor's performance during the previous quarter.

3

d. **Background Check.** Each employee of Contractor assigned to perform Services must successfully complete an Owner-approved screening process which encompasses a 5-panel drug screen through a National Institute on Drug Abuse approved laboratory, a criminal background check to include up to five counties of residence for a period of not less than seven years, and driving history check if candidate will operate motor vehicles in the performance of Services. No candidate will be employed or placed at the Property if: (1) there is a felony conviction within a seven year period that is job-related, and/or (2) a positive result on the drug test, or two or more "dilute" results; and/or (3) one or more conviction(s) for DUI, or reckless driving, if the employee will be driving a vehicle as part of the employee's duties. Documentation indicating that each employee successfully completed the screening must be maintained by the Contractor, and Contractor shall, upon Owner's request, certify in writing that all required background investigations and drug screenings have been successfully completed prior to placement of any individual at the Property.

e. **Health Insurance Program.** In accordance with <u>Section 2</u> of the Code of Conduct attached as **Exhibit E** hereto, Contractor shall make a health insurance program ("**Insurance Program**") available at all times during the Term to Contractor's hourly employees who provide the Services for the Property, subject to the following provisions:

   i.    Contractor's Insurance Program shall be subject to Owner's reasonable written approval. Owner may also periodically send Contractor a notice ("**Owner's Exercise Notice**") which includes a complete copy of an Insurance Program that Owner desires to implement through an insurance company of Owner's choice. Within thirty (30) days after Owner delivers such notice with a proposed Insurance Program and insurance company, Contractor shall either: (1) enter into such Insurance Program with the insurance company, or (2) deliver a notice ("**Contractor's Request Notice**") to Owner requesting approval to implement a comparable alternative Insurance Program (and enclosing a complete copy), which shall be subject to Owner's reasonable written approval. Within thirty (30) days after receiving Contractor's Request Notice, Owner shall deliver a final notice ("**Owner's Final Notice**") to Contractor either approving of the alternate Insurance Program and insurance company or requiring that Contractor proceed with the Insurance Program and insurance company in Owner's Exercise Notice.

   ii.    Owner shall pay the direct net out-of-pocket costs that Contractor pays to the insurance company or insurance provider for those employees who elect to participate in the Insurance Program (after subtracting any employee contributions to such costs), on a monthly basis in arrears within thirty (30) days after Contractor provides proper invoices. Such invoices shall also be separate from the invoices that Contractor provides under **Exhibits B** and **D**, and shall identify the names and positions of each employee who participated in the Insurance Program, each employees' particular plan choice within the Insurance Program, whether the employee was covered for the whole month (and if not, the period covered), the employee's contribution towards the cost, and the net cost the insurance company charged for such employee for such month after subtracting the employee's contribution.

   iii.    This Section shall not be construed as modifying the independent contractor relationship between Owner and Contractor, and shall under no circumstances be construed as creating a co-employer arrangement. Contractor shall have sole control

4

over the manner, methods, and means of administering any Insurance Program hereunder.

6. **Warranty; Materials; Services.** Contractor warrants that (a) the materials to be supplied pursuant to this Contract shall be fit and sufficient for the purposes intended, (b) the materials shall be new, merchantable, of good quality, and free from defects, whether patent or latent, in material or workmanship, (c) Contractor shall have title to the materials supplied and the materials shall be free and clear of all liens, encumbrances and security interests, (d) the materials to be supplied pursuant to this Contract shall not contain asbestos, polychlorinated biphenyls (PCBs), waste oils, creosote, or banned refrigerants, (e) paint shall not contain lead, (f) any pesticides shall be registered in compliance with the Federal Insecticide, Fungicide and Rodenticide Act, and the registration shall not have expired, (g) Contractor has the qualifications and skills to perform its obligations hereunder in a competent manner, and (h) all Services performed under this Contract shall be done in a good and workmanlike manner. In the event of any defect in the materials supplied, Contractor shall replace or repair, at its own costs or expense, any such defect and, in addition to any indemnification to which Owner is entitled, Contractor shall reimburse Owner for any damages suffered by Owner as a consequence of such defects. If Contractor fails to comply fully with any of its obligations with regard to the Services: (i) Contractor shall, to the extent required by Owner, re-perform such Services immediately and without additional charge, and (ii) if such failure continues for twenty-four (24) hours after Owner's written request (which Owner may provide by email to Contractor's local contact person), Owner may perform or arrange for another party to perform such obligations, deduct the cost from amounts owing Contractor, and hold Contractor liable for any additional costs incurred; provided, no prior request by Owner shall be required in an emergency.

Any warranties made in this Contract, together with service warranties and guarantees, shall run to Owner, its successors, assigns, customers, invitees and lessees. These provisions shall not limit any other rights Owner might have in law or in equity.

7. **Covenants.**

   a. Contractor shall not conduct, allow, or authorize the handling of any hazardous materials or materials banned or regulated under environmental, health, or safety laws on the Property other than those materials reasonably necessary to perform the Services. If any of the materials Contractor uses or applies require labeling, posting of warning signs, limitation of access to the work area or the area where the materials are stored, or other precautions, Contractor shall inform Owner in advance and Contractor shall be solely responsible at its cost for taking appropriate precautions. All signage to be posted on the Property shall be subject to Owner's prior approval as to content, design and location. Such approval shall not be unreasonably withheld. Contractor shall not take any action that would subject the Property to permit requirements for the storage, treatment, or disposal of hazardous wastes or petroleum or petroleum by-products including, but not limited to requirements under the Federal Resource Conservation and Recovery Act or state or local laws or regulations.

   Contractor shall not cause or allow the release, disposal or abandonment of any hazardous substances on the Property so as to subject the Property to the Federal Comprehensive Environmental Response, Compensation, and Liability Act or equivalent state laws.

Contractor shall not cause or allow the release or discharge of any hazardous wastes or substances, nuclear or radioactive materials, refrigerants, or petroleum or petroleum by-products into the ambient air, drains, sewers, sumps, wells, underground storage tanks, wetlands, ditches, soils, retention or detention pools, surface waters, or ground water on or under the Property, provided, however, that if by their nature Contractor's Services reasonably include the application of pesticides, herbicides, rodenticides, fungicides, fertilizers, road salt, deicers, wood preservatives, sealants, paint, plaster, joint compound, roofing compounds, tar, asphalt, surfactants, refrigerants, cleaning compounds, caustics, acids, abrasives, adhesives, solder, or other such materials reasonably necessary for the performance of the Services, Contractor shall use only lawful materials and shall apply such materials using the amounts, concentrations, and methods recommended by the manufacturer and shall take all reasonable precautions against creating a nuisance, causing an unlawful discharge, or harming people, property, or the environment.

b.  Contractor shall not dispose of any containers, raw materials, residue, off-specification materials, or wastes into any dumpsters or trash containers that may be located on the Property for the use of Owner or its tenants or other contractors. Contractor shall provide labeled, covered, and secured dumpsters or containers for the disposal of such wastes and shall dispose of such wastes in such dumpsters or containers. No storage of wastes in dumpsters or containers shall exceed thirty (30) days.

c.  Contractor shall not disturb any asbestos containing materials (ACM) in or near the work areas. In the event Contractor suspects that any ACM is located in or around the area(s) in which Contractor is rendering Services, Contractor shall advise Owner of the suspected ACM before beginning to render the Services.

d.  If Contractor receives any summons, citation, directive, information inquiry or request, notice of potential responsibility, notice of violation or deficiency, order, decree, claim, complaint, judgment, letter, notice of environmental lien or response action in progress, or other communication, written or oral, from any governmental agency or third party relating to any alleged violation of or responsibility under health, safety, or environmental laws in relation to the Services, Contractor shall promptly notify Owner in writing and shall provide Owner with copies of relevant documents or, where communications are oral, with summaries thereof. This Section 7.d. shall survive the expiration or termination of this Contract.

8.  **Insurance.** Contractor agrees to furnish and keep in force the following insurance for the term of this Contract:

a.  **Worker's Compensation.** Statutory Worker's Compensation Insurance including the Employer's Liability Coverage as required by the state in which the Property is located. Such policy shall include an alternate employer's endorsement naming as additional insureds the parties described in Section 8.d. below.

b.  **Liability Insurance.** Commercial General Liability Insurance on an occurrence basis with minimum limits of One Million Dollars ($1,000,000.00) per occurrence and Two Million Dollars ($2,000,000.00) aggregate (Five Million Dollars ($5,000,000.00) aggregate in California, Texas and New York) applying on a "per location basis" which shall contain coverage for bodily injury, property damage, premises operations, completed operations, contractual liability and contingent liability naming the Additional

Insureds as required below. The limits can be satisfied through primary and excess liability policies, but all of Contractor's liability insurance policies shall be primary (except for automobile insurance) to any and all policies of the Additional Insureds.

c. **Automobile Insurance.** Automobile Liability Insurance with a minimum combined single limit of One Million Dollars ($1,000,000.00), which shall name the Additional Insureds as required below. Such policy shall include coverage for hired, owned, and non-owned vehicles used by Contractor in the performance of the Services.

d. **Additional Insureds.** The policies described in sub-sections a, b and c above shall be endorsed to include as "**Additional Insureds**" (as further described above): *Owner* exactly as identified on Exhibit A hereto, followed by the phrase: *"GGP Limited Partnership and General Growth Properties, Inc."*

e. **Insurance Policy Requirements.**
   i. All policies of insurance shall be issued by insurance companies with a general policy holder's rating of not less than A- and a financial rating of not less than Class VII as rated in the most current "A.M. Best's Insurance Ratings", and authorized to do business in the state in which the Property is located and authorized to issue such policy or policies. All policies of insurance (except for automobile insurance) must be written as primary policies not contributing with and not in excess of coverage that Owner may carry. Contractor shall furnish copies of endorsements evidencing this prior to commencing work.

   ii. Contractor shall have the right to insure and maintain the insurance policies required by this Contract under blanket insurance coverages so long as such blanket insurance policies comply with the amounts of insurance and other requirements hereof.

   iii. All policies of insurance procured by Contractor shall contain endorsements providing as follows: (a) such insurance may not be materially changed, amended or canceled with respect to Owner except after thirty (30) days' prior written notice which the insurer shall endeavor to provide to Owner by mail, and (b) that Contractor shall be solely responsible for the payment of all premiums under such policies and that Owner shall have no obligation for the payment thereof; (c) that all liability insurance (except for automobile insurance) and excess coverage (umbrella) is primary coverage as required in d(i) above; and (d) that the Contractor's carrier has endorsed a full and complete waiver of subrogation on each policy waiving all rights of subrogation against Owner and other Additional Insureds and that such waiver applies regardless of any self-insured retention or deductible.

   iv. The original policy or policies, or duly executed certificates for the same, shall be delivered to Owner prior to the commencement of any Services pursuant to this Contract and upon renewals of such policies prior to the expiration of any such coverage.

   v. The minimum limits of any insurance coverage required to be carried by Contractor shall not limit Contractor's liability under the indemnity provision herein or for any uninsured losses or costs incurred by Owner.

9. **Indemnification.** Contractor agrees that it shall defend, indemnify, and hold harmless Owner and the property management company (if any) for the Property, and for the foregoing parties, their respective direct and indirect parents and subsidiaries, any of their affiliated entities, successors and assigns and any current or future officer, director, employee, partner, member or agent of any of them and any lenders under any financing agreements, tenants or any party to whom any of the foregoing parties owe obligations under a reciprocal easement agreement ("**Indemnitees**") from and against any (i) claim, liability, loss, damage, action, cause of action, or suit (each a "**Claim**") that may be sustained by or recovered against them by reason of any negligent, intentional or willful act or omission of the Contractor or its agents or employees at the Property, including without limitation the joint or concurring negligence of the Indemnitees and Contractor in connection with the performance of the Contractor's obligations under this Contract, or any Claim arising from Contractor's operation of any equipment or motor vehicle under this Contract, and (ii) any Claim arising in connection with Contractor's breach of this Contract in any way. Contractor shall also indemnify the Indemnitees from Contractor's failure to purchase and maintain all insurance required by this Contract. It is the express intentions of the parties that Contractor shall defend and indemnify from the consequences of an Indemnitee's own negligence where that negligence is alleged to be a concurring cause of the injury, death or damage or where such negligence arises in part from an Indemnitee's acts or omissions, including but not limited to failure to inspect or failure to discover relevant conditions on or around the Property. The indemnity provided for in this <u>Section 9</u> shall not include liability for an Indemnitee's sole negligence.

The Indemnitees shall, within thirty (30) days after service of legal process, provide the Contractor with written notice that an action has been brought and shall require Contractor at its own expense, to employ such attorneys as the Contractor may see fit to employ, and as reasonably approved by the Indemnitees, to defend such Claim on behalf of the Indemnitees. If a tender of defense and/or indemnity is refused by the Contractor or its insurer, or if a defense is provided under any reservation of rights, Contractor will pay liquidated damages in the sum of Ten Thousand Dollars ($10,000.00) to the Indemnitees for the amount of the added internal expenses incurred by the Indemnitees in dealing with the Claim for which tender was refused or rights reserved. This liquidated damages provision shall be in addition to the Indemnitees' actual costs of defense, investigation, litigation, litigation management expenses for in-house counsel, costs of trial and/or settlement of the Claim which are incurred by the Indemnitees which shall be billed to Contractor as incurred until the tender is accepted without reservation. The provisions of this <u>Section 9</u> shall survive the termination or expiration of this Contract and shall not be construed to provide for any indemnification which would, as a result thereof, make the provisions of this <u>Section 9</u> void or to reduce or eliminate any other indemnification or right which the indemnified parties have by law.

10. **Termination.**

a. **Termination for Cause.** Unless cured in accordance with this <u>Section 10</u>, either party may terminate this Contract (a) upon thirty (30) days' prior written notice if the other party commits a breach of this Contract (including any provision of an exhibit referenced herein and forming a part hereof ("**Exhibit**")); or (b) immediately upon written notice if the other party ceases its business operations, becomes insolvent or unable to meet its debts as they mature, makes a general assignment for the benefit of its creditors, or becomes the subject of an appointment of a receiver or trustee for its business or

8.

property, or files or has filed against it proceedings under any provision of the U.S. Bankruptcy Code or similar law. In addition, Contractor may terminate this Contract at any time for cause if Owner (i) modifies the scope of Services, and such modification has, or will reasonably have, a material adverse effect on Contractor. Contractor will provide written notice to Owner of such material adverse effect and Owner will have thirty (30) days to modify the scope of Services to Contractor's reasonable satisfaction. For purposes of this <u>Section 10.a.</u>, a material adverse effect shall mean an effect that individually or in the aggregate with all other effects is materially adverse to Contractor's business. Any notice of termination for cause shall specify the alleged breach or cause in reasonable detail. The party to whom the notice of breach is sent shall have thirty (30) days to cure the alleged breach.

b. **Termination Without Cause.** Owner may terminate this Contract upon thirty (30) days' written notice to Contractor, with or without cause.

c. **Actions Upon Termination.** Upon termination of this Contract with respect to the Property, Contractor shall: (i) prorate Owner's payments pursuant to <u>Section 4</u>; (ii) do all other things reasonably necessary to cause an orderly cessation, or at Owner's option, transition performance of the Services to Owner or another contractor designated by Owner, without detriment to the continued operation or Services for the Property; and (iii) turn over to Owner all reports, data, service manuals, records, and other materials respecting the Property.

d. **Other Matters.** Termination of this Contract shall not affect any party's right to recover damages for violations of this Contract or any other rights or remedies of either party under this Contract or applicable laws (all of which shall be cumulative), except as expressly provided to the contrary in this Contract.

11. **Confidential Information.**

a. **Protection of Confidential Information.** Each party acknowledges and agrees that the terms of this Contract and any information conveyed to or obtained by one party from the other party in connection with this Contract, including trade secrets, know-how, software, source code, information regarding each party's customers, providers, or suppliers, business plans or operations, technical data, or other business or financial information is confidential and proprietary to the disclosing party ("**Confidential Information**"). Neither party shall disclose to any third party during or after the termination of this Contract, and each party shall keep strictly confidential, all Confidential Information of the other, protecting the confidentiality thereof with the same level of effort that it employs to protect the confidentiality of its own proprietary and confidential information of like importance to it and in any event, by reasonable means. Neither party shall use the Confidential Information of the other party except solely as necessary in and during the performance of this Contract. In connection therewith, each party may disclose the Confidential Information of the other to those of such party's personnel engaged in a use permitted by this Contract and with a need to know, provided that such personnel (i) are directed to treat such Confidential Information confidentially and not to use it other than as permitted hereby and (ii) are subject to a legal duty to maintain the confidentiality thereof. In the event of any improper use, disclosure, or loss of Confidential Information, the receiving party shall immediately notify the disclosing party. Each party shall be responsible for any improper use, disclosure, or loss of any Confidential Information of the other by such party's officer, partners, principals, employees, agents, or independent

9

contractors. Contractor represents and warrants that all of its employees and agents to whom the Confidential Information of Owner is or could be disclosed have been advised of the confidentiality obligations specified herein and are under an obligation of confidentiality, both during and after their employment with or by Contractor, that is no less stringent than that contained herein.

b.   **Exceptions.** The obligations of this Confidential Information provision shall not apply (i) to any Confidential Information for a period longer than is legally permissible to restrict disclosure of that item of Confidential Information or (ii) to any Confidential Information that was: (A) at the time of disclosure to such party, in the public domain or commonly known in either party's industry; (B) after disclosure to such party, published or otherwise entered the public domain through no fault of such party; (C) in the possession of such party at the time of disclosure to it, if such party was not then under an obligation of confidentiality with respect thereto; (D) received after disclosure to such party from a third party who had a lawful right to disclose such Confidential Information of the other party; or (E) disclosed with the prior written approval of the other party; provided that, in the event a party wishes to disclose the Confidential Information of the other party pursuant to one of the foregoing exceptions, it shall provide the other party with prior written notice and provide legally sufficient evidence in support of the application of the relevant exception. It shall not disclose the Confidential Information if the other party objects to its disclosure on the basis of a good faith objection to the applicability of the relevant exception.

c.   **Required Disclosure.** Either party may disclose the other party's Confidential Information to the extent required by law or by order of a court or governmental agency; provided, however, that the recipient of such Confidential Information shall give the owner of such Confidential Information prompt notice, and shall use its best efforts to cooperate with the owner of such Confidential Information if the owner wishes to obtain a protective order or otherwise protect the confidentiality of such Confidential Information. The owner of such Confidential Information reserves the right to obtain a protective order or otherwise protect the confidentiality of such Confidential Information.

d.   **Return of Confidential Information.** Unless a party is expressly authorized by this Contract to retain the other party's Confidential Information, such party shall promptly return or destroy, at the other party's option, the other party's Confidential Information, and all copies thereof, within five (5) business days after the earlier of its receipt of the other party's written request or the expiration or termination of this Contract, and shall certify to the other party that it no longer has in its possession or under its control any Confidential Information in any form whatsoever, or any copy thereof.

e.   **Injunctive Relief.** Each party acknowledges that any breach of any provision of this Section 11 by either party, or its personnel or subcontractors, will cause immediate and irreparable injury to the other party, and in the event of such breach, the injured party shall be entitled to injunctive relief, without bond or other security, and to any and all other remedies available at law or in equity.

12. **Records.** Contractor shall maintain books and records (referred to collectively in this Section as "records") in connection with the Services provided (which shall include without limitation supporting documentation of Contractor's actual out-of-pocket amounts paid each month during the Term to purchase equipment, supplies and/or other materials Contractor actually uses at the Property) and all payments to be made between the parties under this

Contract. Separate records shall be kept for the Property. Contractor shall ensure records are maintained in an orderly manner for not less than three (3) calendar years after the expiration or earlier termination of this Contract. Owner shall be permitted to examine and audit these records and all supporting documents at all reasonable times and upon reasonable notice. Owner, and Owner's authorized agents, shall have reasonable access to such records for audit purposes during normal business hours during the Term and thereafter for the period during which Contractor is required to maintain such records.

13. **Audit.**

a. **Audit Rights.** Pursuant to Section 12 (Records), Contractor shall provide to Owner, Owner's internal and external auditors, and such other representatives as Owner may reasonably designate from time to time (collectively, "**Auditors**") access at reasonable times and after reasonable notice to Contractor's books and records to the extent necessary to verify and examine Contractor's charges and its performance of the Services. Any information obtained by Owner as a result of such audit shall be treated as confidential, except in any litigation or proceeding between the parties.

b. **Audit Responses.** If an audit reveals any overpayment of any sums payable by Owner pursuant to this Contract, Contractor shall, for any audited period:

i. If the amount of such overpayment is less than three percent (3%) of the correct billing amount, promptly remit to Owner the amount of the overpayment; or

ii. If the amount of such overpayment is three percent (3%) or more of the correct billing amount, promptly remit to Owner the amount of the overpayment and, within ten (10) days of its receipt of an invoice therefor, reimburse Owner for all reasonable out-of-pocket fees and expenses incurred by Owner in connection with the applicable audit, together with interest on any overpayment calculated at a rate of two percent (2%) over the then current Wall Street Journal prime rate, as published from time to time (the "**Interest Rate**"); or

iii. If the amount of such overpayment is five percent (5%) or more of the correct billing amount, promptly remit to Owner one-hundred fifty percent (150%) of the amount of the overpayment and, within ten (10) days of its receipt of an invoice therefor, reimburse Owner for all reasonable out-of-pocket fees and expenses incurred by Owner or its affiliates in connection with the applicable audit, together with interest on any overpayment calculated at the Interest Rate; or

iv. If the amount of such overpayment is ten percent (10%) or more of the correct billing amount, promptly remit to Owner two-hundred percent (200%) of the amount of the overpayment and, within ten (10) days of its receipt of an invoice therefor, reimburse Owner for all reasonable out-of-pocket fees and expenses incurred by Owner or its affiliates in connection with the applicable audit, together with interest on any overpayment calculated at the Interest Rate.

v. Contractor agrees that payment of any amount in excess of any overpayment, fees, expenses and interest required by this Section 13.b. shall be paid as liquidated damages and not as a penalty.

vi. If the findings of the audit reveal that an Owner has underpaid Contractor by a net amount, such Owner shall reimburse Contractor for such net underpayment within thirty (30) days of the results of the audit.

c. **Survival.** The provisions of this <u>Section 13</u> shall survive the expiration or earlier termination of this Contract for a period of three (3) years.

**14. Equipment; Uniforms.**

a. **Operation.** If the Services require the use of equipment, including, without limitation, recovery equipment for refrigerants, spraying equipment, snow blowers, plows, and/or backhoes, the equipment shall meet all safety standards under applicable laws, shall be operated in strict accordance with all applicable health and safety laws, and shall be operated only by personnel who are trained or certified in the use of the equipment and who are provided with appropriate personal protection. If Contractor is required to repair any equipment it is using at the Property in order to perform the Services, it shall prevent the release of fluids, oils, fuels and other contaminants.

b. **Use of Owner's Equipment.** In the event Contractor is granted the right to use any Owner or Property facilities, equipment, tools or materials (collectively "**Owner Equipment**") during the Term, such right shall be gratuitous and Contractor shall indemnify and hold harmless Owner and the Indemnitees from and against any claim, loss, expense or judgment for injury to person or property arising out of the use of such Owner Equipment, whether or not such claim is based on its condition or on the alleged negligence of Owner in permitting its use. Within thirty (30) days of the execution of this Contract (or, with respect to any subsequent grant to Contractor to use any Owner Equipment, within ten (10) days of such grant) Owner and Contractor shall jointly inventory Owner Equipment using the form list set forth on <u>**Exhibit F**</u> hereto, or such other form as mutually agreed. Contractor shall immediately inform Owner of any damage to, loss of or need for maintenance, repair or replacement of any Owner Equipment and, subject to any damage, destruction or loss resulting from Contractor's negligence or willful misconduct (including Contractor's failure to inform Owner of the need to repair or replace any Owner Equipment), Owner shall keep the Owner Equipment in proper working order during the Term, and it shall be the responsibility of Owner, at its expense, to provide, maintain and replace as required all Owner Equipment. Contractor shall be responsible for repair or replacement of any Owner Equipment necessitated by the negligence or willful misconduct of Contractor, including any employee, agent or subcontractor thereof (each a "**Contractor Party**"). Contractor shall regularly inspect any Owner Equipment used by and/or in the possession of any Contractor Party prior to using such Owner Equipment. In no event will any Contractor Party acquire any right to or title in any Owner Equipment. At the expiration or termination of this Contract, Contractor shall surrender all Owner Equipment in the same condition as when it was provided to Contractor, normal wear and tear excepted. Subject to Owner's obligation to maintain and replace Owner Equipment as explicitly provided herein, Contractor shall be responsible for the reimbursement to Owner of the actual expenses incurred to restore or replace any Owner Equipment.

c. **Uniforms.** Contractor's employees who perform the Services will report for duty in a complete, neat and clean uniform as approved by Owner. Contractor's employees will not perform any of the onsite duties under this Contract without being in full uniform, unless previously approved by Owner. Contractor shall, at its sole cost and expense, furnish each of its employee's performing Services at the Property with uniforms and

12

equipment, sufficient to ensure that, while on duty, each of Contractor's employees is in compliance with the requirements of this Section. Owner may change the color of uniforms, the actual cost (without any markup) of which shall be borne solely by Owner.

15. **Notices.** All notices, requests and approvals required under this Contract must be in writing and addressed to the other party's designated contact for notice at the following addresses and, as to Owner, to the address set forth therefor on **Exhibit A** or to such other address as such party designates in writing. All such notices, requests and approvals will be deemed to have been given either when personally delivered or upon delivery by either registered or certified mail, postage prepaid with return receipt requested, or by a recognized commercial courier service providing proof of delivery. Furthermore, if there is any notice or other correspondence which a party wants to use to preserve or assert a Claim or other right under this Contract, or any notice or demand required under any statute or governmental rule or regulation, a duplicate copy of such notice or correspondence must be addressed as follows:

| | |
|---|---|
| Owner: | c/o GGP Limited Partnership |
| | 110 N. Wacker Drive |
| | Chicago, IL 60606 |
| | Attn: Senior Director – National Operations |
| | |
| With a copy to: | General Growth Properties, Inc. |
| | Legal Department |
| | Corporate Transactions and Ventures |
| | 110 N. Wacker Drive |
| | Chicago, IL 60606 |
| | |
| Contractor: | Triad Service Solutions, Inc. |
| | 8257 Southpark Circle |
| | Littleton, CO 80120 |
| | Attn: Mike Bondi |

Both original and duplicate notices shall be sent in accordance with the procedures set out in this Section 15. The provisions of this Section 15 shall survive termination of this Contract.

16. **Independent Contractor.** The parties are independent contractors with respect to one another, and this Contract shall not establish an agency, partnership, joint venture, co-employer or employment or other such relationship between them. Neither party has any, nor shall have any, authority to enter into agreements or contracts on the other party's behalf or bind such other party to any obligations and shall not represent otherwise to any third party. Owner understands and agrees that all Contractor personnel are Contractor's employees or agents and, as such, are subject to the direction, policies and procedures of Contractor only. Each party acknowledges that it has separate responsibility for all applicable federal, state, provincial and local taxes related to employees, for itself and any of its employees; and each party agrees to indemnify and hold the other harmless from any claim or liability therefor. Each party understands and agrees that its employees shall not be entitled to participate in health or disability insurance or retirement or pension benefits, if any, to which employees of the other party may be entitled.

17. **Compliance.** Contractor agrees, in the performance of this Contract, to observe and comply with all applicable Federal, State and local laws, rules and regulations including, without

13

limitation, (i) laws and regulations regarding minimum compensation, overtime, hours of work or other conditions of employment (as exist as of the Effective Date or as may be enacted or imposed in the future), and/or (ii) any applicable state and local statutes and laws requiring that a new maintenance contractor hire existing employees of the current contractor for a temporary period. Contractor shall also comply with any collective bargaining agreement ("CBA") to which Contractor is a party, and the applicable National Operations Senior Director of General Growth Properties, Inc. shall have authority to require that on-site Property management and operations personnel acquiesce in Contractor's compliance with applicable provisions of any such CBA, including but not limited to any such provisions requiring wage increases which Contractor seeks to charge to Owner; provided, this sentence is not intended to make the union or other parties to any CBA a third party beneficiary of this Contract with any rights against such Owner or General Growth Properties, Inc. Contractor shall not discriminate in the conduct and operation of its business at the Property against any person or group of persons because of the race, age, color, sex, religion, national origin, or other protected classification of such person or group of persons.

18. **Assignment.** Contractor shall obtain Owner's written consent (which consent may be withheld in Owner's good faith discretion) before Contractor assigns or otherwise transfers this Contract or any interest herein, by operation of law or otherwise (each a "**Transfer**"). Without limiting the generality of the foregoing, "Transfer" shall include: (a) the conversion, merger or consolidation of Contractor into a limited liability company or limited liability partnership; (b) if Contractor is then a partnership or limited liability company, the withdrawal or change, voluntary, involuntary or by operation of law, of a majority of the partners or members, or a transfer of a majority of partnership or membership interests, within a twelve (12) month period, or the dissolution of the partnership or company, or the assignment of any management agreement for any such partnership or limited liability company to another party; and (c) if Contractor is then a corporation, the dissolution, merger, consolidation or other reorganization of Contractor, or within a twelve (12) month period: (i) the transfer of more than an aggregate of fifty percent (50%) of the voting shares of Contractor, or (ii) the sale of more than an aggregate of fifty percent (50%) of Contractor's net assets. Owner may assign this Contract and Contractor shall thereafter look solely to such assignee for performance hereunder upon written notice of such assignment.

19. **Governing Law.** This Contract shall be governed in all respects by and construed in accordance with the substantive laws of the State of Illinois without regard to its choice of law or conflicts of laws provisions (whether of the State of Illinois or any other jurisdiction) that would cause the application of the laws of any state or foreign jurisdiction other than the State of Illinois.

20. **Reformation and Severability.** If any provision or term of this Contract shall, to any extent, be held invalid, illegal or unenforceable, that provision shall, to the extent possible, be modified in such manner as to be valid, legal and enforceable but so as to most nearly retain the intent of the parties hereto as expressed herein, and if such a modification is not possible, that provision shall be severed from this Contract, and in either case the validity, legality and enforceability of the remaining provisions of this Contract shall not in any way be affected or impaired thereby.

21. **Waivers; Modification.** No waiver, modification or amendment of any term or condition of this Contract or any Exhibit shall be valid or of any force or effect unless made in writing, signed by the parties hereto or their duly authorized representatives, and specifying with particularity the nature and extent of such waiver, modification or amendment and the

14

Property to which it applies. No such waiver, modification or amendment shall, in any event, be construed to be a general waiver, modification or amendment of any of the terms or conditions of this Contract or the Exhibits, but the same shall be strictly limited and restricted to the extent and occasion specified in such writing. The failure of a party at any time to exercise any of its rights or options under this Contract shall not be, or be construed to be, a waiver of such rights or options or prevent such party from subsequently asserting or exercising such rights or options nor shall it be construed, deemed or interpreted as a waiver of, or acquiescence in, any such breach or default or of any similar breach or default occurring later.

22. **Legal Fees.** If either party shall institute any action or proceeding against the other relating to the provisions of this Contract, the unsuccessful party in the action or proceeding shall reimburse the prevailing party for all reasonable expenses and attorneys' fees and disbursements.

23. **Integration.** This Contract and the Exhibits hereto contain the entire agreement between the parties. This Contract or the Exhibits may be amended only by written agreement signed by an authorized representative of each party hereto and thereto.

IN WITNESS WHEREOF, the parties hereto have each approved and executed this Contract as of the Effective Date first above written.

OWNER:

PARK MEADOWS MALL, LLC, a Delaware limited liability company

By: _____
       Authorized Signatory

CONTRACTOR:

TRIAD SERVICE SOLUTIONS, INC.

By: _____

Name: _____Mike Bondi_____

Title: _____PRESIDENT_____

Contractor's Federal I.D. # ___84-0916625___

15

EXHIBIT A

PROPERTY

| Property Name | Owner | Address | Property Contact |
|---|---|---|---|
| Park Meadows | Park Meadows Mall, LLC | 8401 Park Meadows Dr, Lone Tree, CO 80124 | William Pollard Sr. Operations Manager (303) 792-2999 |



## EXHIBIT B

### INITIAL BILLING RATES FOR EMPLOYEES

Initial labor rates as agreed upon by the parties, subject to Section 4c of this Contract.

In the event a new employee is hired during the Term, the labor rate for such employee will be determined prior to hiring and subject to the approval of Owner.

**EXHIBIT C-1**

**GENERAL SPECIFICATIONS**

The following general maintenance and operations specifications shall apply at the Property, as modified in Exhibits C-2 or any work order. References to the "**opening**" of the Property or the hours during which the Property is "**open**" mean when the Property is open to the public.

Daily Tasks:  Daily tasks include but are not limited to the following:

**Exterior Inspection:**
- Outer ring road loop, including signage, lighting & landscaping
- Exterior monument signage and lighting
- Inner ring road loop, including signage, lighting & landscaping
- Property's building façade, lighting and signage if applicable
- Entrance doors and walkways
- Loading zones, compactors and pads
- Sidewalks, curbs, parking stops, and covered parking areas
- Exterior pump stations
- Any additional areas required by Operations Manager

**Interior Inspection:**
- Restrooms
- Vestibules at each entrance
- Elevators and escalators
- Property common area soft seating
- Food court seating
- Interior lighting and electrical rooms
- Back hallways and Receiving zone doors
- Sprinkler Riser rooms, machine rooms, shop and roof
- Visually inspect the equipment around the shop for any unusual conditions

**Communications:**
- Supervisor or lead will be a single point of contact for Property's General Manager or Operations Manager.
- Supervisor or lead will check in with the Property's Operations Manager and General Manager periodically during the day to keep them abreast of the ongoing operations and any information that affects operations.

- The Supervisor or lead will schedule meetings with the Property's Operations Manager or General Manager to go over schedules of upcoming events and / or seasonal needs to determine staffing and schedule adjustments.

- The Property's Operations Manager and General Manager will be notified immediately of anything that could impact day-to-day operations.

**WORK ORDERS:** Work orders will be provided by either the Property's Operations Manager or designee thereof. At the beginning of each shift, Contractor's onsite employees will check for any emergency work orders to complete and review any unfinished work from the previous day. The Property's Operations Manager will establish the order of importance for work. Work to be performed subject to work orders will include, but not be limited to, all preventive maintenance tasks and minor repairs:

- **Drywall** - repair and painting
- **Flooring repair** - all types; including tile, carpet, concrete, wood plank, vinyl, laminate, etc.
- **Wall repair** - all types; including drywall, tile, wood panels, vinyl, laminate, etc.
- **Painting or repainting** – Touch up painting, area painting and painting of wall repairs
- **Plumbing** – Repair faucet and flush valves (manual and sensor type), drinking fountain repairs, value repair and replacement, toilet/urinal repair and replacement, basic snaking and unclogging of lines and lift station monitoring. Minor repair of piping, minor repair of drain, waste and vent (DWV) lines, replacement of plumbing trim, this also includes the front of house hose bibs in common area. Landscape irrigation where applicable.
- **Basic Electrical** – light bulb, lamp replacement, Ballast replacement, switch plate replacement. Inspect Property lighting for proper function. Check all Property emergency lighting, check by pass switches for common area lighting for proper function.
- **Marketing** – setup and teardown of seasonal events, marketing events, tables, chairs, table cloths, staging, phone electrical needs and any other items needed for a successful marketing event. Banner installation and change out. Door and window clings.
- **Business Development** – RMU set up for new tenants. This may include locating phone lines, RMU moves to new locations to include new shelves, lights or glass cases. RMU cart repair to include doors, drawer glides, re-key locks.
- **HVAC** – Inspect all RTU's for damage and general conditions that may require a contractor to repair the units. Inspect belts and/or filters for replacement where applicable.
- **Roof** – Inspect roof for damage that may have occurred from contractors or storms; identify potential problems.
- **Skylights / Clerestory** – When inspecting the roof, all skylights and clearstory windows should be reviewed for damage, missing or damaged seals, broken glass, and water proofing. Covering window surfaces may be required for special events.
- **Amenities** – sign holder repair, Bench repair, Trash can repair, Planter repair and removal, Food Court table and chair repairs, blade sign repair, way finding signage.
- **Kiddie Kruzzers/Strollers** (Owner owned) – repair strollers, stroller stations, clean, and re-sticker. Clean and maintain wipe stations.

- **Play Area** -- inspect, clean and repair play area amenities, wipe station and hand sanitizer station.
- **Parking lots** -- cold patch pot holes, repair/ replace stop signs, handicap signs, no parking signs, and any other way findings signs.
- **Doors and Door Hardware** -- repair and replace service and entryway doors and door hardware including closers, hinges, kick plated, door sweeps/weather stripping, locksets/dead bolts, and frames, tightening, lubrication and checking ADA door opening poundage.

**EMERGENCY SERVICES:** Upon request for emergency Services (including, without limitation, snow removal or emergency repair) by Owner, Contractor will promptly provide personnel necessary to perform such Services. In accordance with <u>Section 4d</u> of this Contract, Contractor shall invoice Owner for the hours actually worked by Contractor's employees performing unscheduled emergency Services, provided, however, that Owner shall pay for a minimum of four (4) hours for any such employee who performs less than four (4) hours of unscheduled emergency Services.

**GENERAL:** When preparing to perform work, personnel will check tools and pick up necessary items to perform such work including all safety and personal protection equipment necessary. While approaching the designated work area personnel will make sure that all safety precautions are in place to limit access to such area or otherwise safeguard the area as necessary. Personnel are to be trained to look, smell and listen to the facility as they go about their day-to-day activities. Contractor's employees are the eyes, ears, and noses of the Property, assisting in identifying lighting issues, electrical or gas fumes, lubrication need for doors, hinges or motors, belts etc. Personnel will maintain the highest level of safety and adhere to all training and code requirements. Projects will not be left unsecured or in a manner that may create a hazardous condition. At the end of each day all tools and equipment will be cleaned and properly secured. Any unusual conditions will be immediately reported to the appropriate personnel before leaving.

**TRAINING:** All Contractor's employees will be properly trained and will perform the Services and all work in compliance with all applicable laws and regulations, as well as in the following specified areas:

- **Equipment Operation -** Hi-lift, freight lift, pallet jacks, compactors, walk behind and riding scrubbers.
- **Hand Tools Operation** -- Drills, saws, multi-meter, ladders, etc.
- Personnel Training
- Safety and the Workplace
- Preventive Maintenance
- Agency Compliance
- Quality Customer Service

## EXHIBIT C-2

PROPERTY-SPECIFIC SPECIFICATIONS

N/A

**EXHIBIT D**
**SAMPLE MONTHLY INVOICE**
[On the following page]

## MONTHLY INVOICE

PROPERTY
NAME: _____

BILLING
PERIOD: _____

| POSITION | Pay Rate Per Hour | Wage Burden % | Bill Rate Per Hour | Actual Hours | | Actual Cost |
|---|---|---|---|---|---|---|
|  | $ | 0% | $ |  | $ | - |
|  | $ | 0% | $ |  | $ | - |
|  | $ | 0% | $ |  | $ | - |
|  | $ | 0% | $ |  | $ | - |
|  | $ | 0% | $ |  | $ | - |
|  | $ | 0% | $ |  | $ | - |
|  |  |  | TOTAL: | 0 | $ | - |

| OTHER COSTS | Annual Amount per Exhibit B | 1/12 of Annual Amount |
|---|---|---|
| **Operating Costs:** Equipment and equipment repairs, supplies, paper and plastic, uniforms | $          - | $          - |
| **Overhead:** Facility Manager salary and associated costs; Assistant Facility Manager salary and associated costs; regional costs; corporate costs; profit. | $          - | $          - |
| **Risk:** General liability and risk | $          - | $          - |
|  | TOTAL: $          - |  |
|  | Sales Tax |  |
|  | TOTAL AMOUNT DUE: $          - |  |

Each invoice shall be accompanied by a time recapitulation showing the names of the employees who worked during the monthly period, the total number of hours each employee worked, and must be approved by the Property's General Manager or designee.

Invoice
Submitted By: _____    Date: _____

Invoice
Approved By: _____    Date: _____

**EXHIBIT E**
**CODE OF CONDUCT**

GGP Limited Partnership and General Growth Management, Inc., as managing agent (collectively, "GGP"), believe it is important that our maintenance vendors be responsible corporate citizens and share in our philosophy concerning matters of social, environmental, and working conditions.

We strive to build long-term relationships with maintenance vendors that share our commitment to promote good practices. We expect all of our maintenance vendors to respect fundamental human rights, to provide reasonable and healthy working conditions, and to treat their workforces fairly, with dignity and respect.

Therefore, we developed this code of conduct. In order to function as one of our maintenance vendors, each vendor must accept the following general responsibilities and maintain the minimum standards, set forth below, regarding conditions of employment for each vendor's maintenance personnel assigned to GGP properties. We require adherence to these expectations as a condition of all maintenance vendors' ongoing relationships with GGP.

1.    **We are committed to fair treatment and equal employment opportunities.**

We recognize, respect, and support an employee's legitimate expectation to be treated fairly and the right to equal employment opportunity. Accordingly, vendors shall implement and maintain a clear and effective complaint resolution process for their employees. All vendor employees should be able to work in an environment free of harassment and unlawful discrimination by another employee, supervisor or customer. Vendors shall comply with all applicable laws prohibiting discrimination based on race, color, creed, sex, age, national origin, disability, pregnancy, veteran status, marital status, sexual orientation, as well as any other category protected by federal, state or local laws.

2.    **Hourly maintenance staff assigned to GGP properties shall be offered competitive compensation and the option of health care benefits.**

Wages and conditions of work offered by vendors shall be competitive within each respective market. Vendors shall determine the appropriate wage rates and wage progressions offered to each employee within the market-specific wage ranges provided by GGP. The market-specific ranges may provide minimums that are beyond the governing federal, state or local minimum wage rates. Vendors also shall provide to their employees the option of healthcare insurance at reasonable cost. Benefit plan and contribution terms must meet GGP's standards for employee coverage and affordability.

3.    **We expect compliance with the law and encourage our vendors to exceed minimal legal requirements.**

Vendors shall follow the governing federal, state, and local guidelines regarding wages, benefits, hours of work, overtime, meal and break periods, safety, and those governing rights and responsibilities with respect to all other aspects of work and working conditions. We encourage vendors to look for opportunities to provide and develop human resource policies and programs designed to establish them as "employers of choice".

4.    **We care for the environment.**

Vendors must always strive to minimize potential damaging effects to the environment. Accordingly, vendors shall strive to reduce adverse environmental impacts by reducing waste and emissions to air, ground, and water; handling, storing, and disposing of hazardous waste in an environmentally safe manner; and recycling, as appropriate, used products and other material.

We reserve the right to audit compliance with these expectations, periodically, and vendors agree to cooperate in all such reviews. If and when we determine that one or more areas need improvement, vendors agree to work with us toward achieving full compliance with these standards as efficiently as possible.



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
3/31/2014

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Joel Walker | | |
|---|---|---|---|
| Blue Sky Ins | PHONE (A/C, No, Ext): (303) 647-5477 | | FAX (A/C, No): |
| 9090 South Ridgeline Blvd. #206 | E-MAIL ADDRESS: jwalker@bskyins.com | | |
| Highlands Ranch    CO  80129 | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : SECURA | | 22543 |
| INSURED | INSURER B : | | |
| Triad Service Solutions INC | INSURER C : | | |
| 8080 Southpark Lane | INSURER D : | | |
| | INSURER E : | | |
| Littleton     CO   80120 | INSURER F : | | |

**COVERAGES        CERTIFICATE NUMBER:CL1432804436        REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS-MADE X OCCUR | | | CP3220216 | 3/25/2014 | 3/25/2015 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 300,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: X POLICY PRO-JECT LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** X ANY AUTO ALL OWNED AUTOS X SCHEDULED AUTOS HIRED AUTOS NON-OWNED AUTOS | | | A3204226 | 3/25/2014 | 3/25/2015 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Bus Auto Wrap Phys Dmg | $ $500 Ded |
| A | **UMBRELLA LIAB** X OCCUR EXCESS LIAB CLAIMS-MADE DED RETENTION $ | | | U3220219 | 3/25/2014 | 3/25/2015 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | WC3220218 | 3/25/2014 | 3/25/2015 | X WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**
General Growth Properties, Inc., GGP Limited Partnership, Park Meadows Mall, L.L.C., and their respective subsidiaries, any of their affiliated entites, successors and assigns and any current or future director, officer, employee, partner, member of or agent of any of them.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Park Meadows Mall, L.L.C. RE: Park Meadows Mall, L.L.C. 8401 Park Meadows Center Drive Lone Tree, CO  80124 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Joel Walker/BSCL |

ACORD 25 (2010/05)
INS025 (201005).01

© 1988-2010 ACORD CORPC
The ACORD name and logo are registered marks of ACORD

**ACORD®** CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 3/22/2013 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: Joel Walker | |
|---|---|---|---|
| Blue Sky Ins | | PHONE (A/C, No, Ext): (303) 647-5477 | FAX (A/C, No): (303) 265-9370 |
| 7208 S. Tucson Way # 230 | MAR 28 2013 | E-MAIL ADDRESS: jwalker@bskyins.com | |
| Centennial        CO  80112 | | INSURER(S) AFFORDING COVERAGE | NAIC # |
| INSURED | | INSURER A: Western World | |
| Triad Services Solutions Inc | | INSURER B: SECURA | 22543 |
| 8257 Southpark Circle Suite A | | INSURER C: James River | |
| | | INSURER D: Pinnacol Assurance | 41190 |
| Littleton       CO  80120 | | INSURER E: | |
| | | INSURER F: | |

COVERAGES       CERTIFICATE NUMBER: CL1332201820       REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS-MADE [X] OCCUR | | | NPP1347631 | 3/25/2013 | 3/25/2014 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [X] POLICY [ ] PRO-JECT [ ] LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| B | AUTOMOBILE LIABILITY [X] ANY AUTO [ ] ALL OWNED AUTOS [X] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | | | CA3204226 | 3/25/2013 | 3/25/2014 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | Scheduled Auto Comp & Coll | $ $500 Ded |
| C | [X] UMBRELLA LIAB [ ] OCCUR [ ] EXCESS LIAB [ ] CLAIMS-MADE | | | UMB5680001 | 3/25/2013 | 3/25/2014 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | [ ] DED [ ] RETENTION $ | | | | | | | $ |
| D | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 4163135 | 4/1/2013 | 4/1/2014 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 500,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 500,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
General Growth Properties, Inc., GGP Limited Partnership, Park Meadows Mall, L.L.C., and their respective subsidiaries, any of their affiliated entites, successors and assigns and any current or future director, officer, employee, partner, member of or agent of any of them.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Park Meadows Mall, L.L.C. RE: Park Meadows Mall, L.L.C. 8401 Park Meadows Center Drive Lone Tree, CO  80124 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE Joel Walker/BSCL |

ACORD 25 (2010/05)
INS025 (201005).01

© 1988-2010 ACORD CORPORATION
The ACORD name and logo are registered marks of ACORD